UNITED STATES of America, for the use of: "AUTOMATIC" SPRINKLER CORPORATION OF AMERICA, Plaintiff,

v.

MERRITT–CHAPMAN & SCOTT CORPORATION, Fidelity and Deposit Company of Maryland, American Employers' Insurance Company, Aetna Casualty and Surety Company, National Surety Corporation, Maryland Casualty Company, New Amsterdam Casualty Company, Hartford Accident and Indemnity Company, Defendants.

Civ. A. No. 5779.

United States District Court
M. D. Pennsylvania.

Feb. 20, 1961.

See also 22 F.R.D. 248.

Joseph P. Brennan, Scranton, Pa., Joseph C. Coakley, Cleveland, Ohio, for plaintiff.

O'Malley, Morgan, Bour & Gallagher, Scranton, Pa., Manning, Hollinger & Shay, New York City, for defendants.

FOLLMER, District Judge.

In May 1952, Merritt-Chapman & Scott Corporation (hereinafter called "Merritt-Chapman") entered into a contract with the United States of America for the construction of buildings, utility systems and site improvements for a Signal Corps Depot at Tobyhanna, Monroe County, Pennsylvania. The initial contract amount, before change orders, was $16,353,282.41 and the prime contractor, Merritt-Chapman, furnished a payment bond with Fidelity and Deposit Company of Maryland, American Employers' Insurance Company, Aetna Casualty and Surety Company, National Surety Corporation, Maryland Casualty Company, New Amsterdam Casualty Company, and Hartford Accident and Indemnity Company, wherein and whereby Merritt-Chapman, as principal, and the several surety companies bound themselves in the sum of $2,500,000.

Under a subcontract[1] known as No. 6–1557, dated February 4, 1953 (plaintiff's Exhibit No. 2) "Automatic" Sprinkler Corporation of America (hereinafter called "Automatic") performed a part of the work required of the prime contractor under its contract with the United States of America, i. e., installed automatic sprinkler system on the site of the aforesaid Signal Corps Depot, Tobyhanna, Pennsylvania. Thereafter under a second contract known as No. 6–1616 (plaintiff's Exhibits Nos. 5, 6, 7, and 8), plaintiff again performed a part of the work required of the prime contractor under its contract with the United States of America, i. e., installed a water flow alarm system. This contract was not covered by a formal writing but was encompassed in four letters.

In this action under the Miller Act, 40 U.S.C.A. § 270a et seq., there was testimony on behalf of plaintiff that it had made complete performance under both of said contracts and that there remained due and owing to it from defendant under Contract No. 1 the sum of

1. Frederick Raff Company was a subcontractor under Merritt-Chapman and "Au- tomatic" Springler Corporation of America was a subcontractor under Raff.

$7,828.07 and under Contract No. 2 the sum of $13,691.25, or a total of $21,-519.32.

At the first hearing on this matter, which was before the Court and without a jury, plaintiff did not offer any testimony to prove when the last work was done or the last material was supplied under either of the said contracts but rather relied entirely upon four exhibits, to wit: plaintiff's Exhibits Nos. 9, 10, 14A, and 14B, all of which were admitted without exception. Exhibit No. 9 is a ledger card captioned "Accounts Receivable," Contract No. 6–1557, Frederick Raff Company, in connection with Signal Corps Depot, Tobyhanna, Pa., and which shows a balance owing of $7,828.07. According to the exhibit, the last requisition by plaintiff against Raff was made on August 10, 1954. Exhibit No. 10 is a ledger card captioned "Accounts Receivable," Contract No. 6–1616, Frederick Raff Company, in connection with Tobyhanna Signal Corps Depot, Tobyhanna, Pa., and which shows a balance owing of $13,691.25. This exhibit showed only one requisition under date of July 21, 1954. Exhibit No. 14A is copy of letter dated

November 5, 1954, from "Automatic" Sprinkler Corporation of America addressed to Mr. N. W. Eastwood, General Project Manager, Merritt-Chapman and Scott Corporation, 260 Madison Avenue, New York, New York. This letter is set forth in full in note hereto.[2] Exhibit No. 14B is Registry Receipt acknowledging receipt of said letter of November 5, 1954, stamped posted at New York 16, N. Y., addressed return to "Automatic" Sprinkler Corporation of America, H. E. Teubner, Credit Manager, P. O. Box 360, Youngstown, Ohio, and signed for Merritt-Chapman & Scott Corp., indicating delivery on November 8, 1954. The mailing date was not proven. It was testified on behalf of the plaintiff, without objection, that Exhibits 14A and 14B were taken from the files of plaintiff where they were kept in the regular course of business.

Apparently relying on the sufficiency of the exhibits above referred to, plaintiff made no attempt to prove that the last work was performed or the last material was supplied on either of said contracts within ninety days of November 8, 1954, (date of receipt of letter of November

2. "Registered Mail

November 5, 1954

"Mr. N. W. Eastwood-General Project Manager
"Merritt-Chapman and Scott Corporation
"260 Madison Avenue
"New York, New York
 "Re: Signal Corps Depot—Tobyhanna, Pennsylvania
 "Our Contracts Number 6–1616 and 6–1557
"Dear Mr. Eastwood:
"The "Automatic" Sprinkler Corporation of America are subcontractors to Frederick Raff Company, Hartford, Connecticut.
"As you know, the two contracts above captioned have been final billed, as our records indicate completion of the installations.
"On contract 6–1557 there is a final balance of $77,828.07 due us, and on contract 6–1616 there is a balance of $13,-691.25 due us. There is also an extra in connection with this installation—our contract 6–1642, face amount $28,815.00, for which several progress requisitions have issued amounting to $9,000.00. Several communications have been sent

Frederick Raff Company concerning this over-all installation, and it is our understanding that the reason we are not being paid, is because they have not received payment for their work done at the site. They tell us when they do, we will be reimbursed.
"Under the terms of the Miller Act, United States Code, Title 40, you are familiar with the fact that it is necessary for a sub-contractor to notify the prime contractor within a period of ninety days from completion, if payment has not been received.
"Please accept this as formal request under this Act for payment the amounts above enumerated. Your comments regarding this entire situation would be greatly appreciated.
 "Very truly yours,
 " 'Automatic' Sprinkler Corporation of America
 "H. E. Teubner
 "Credit Manager
"HET:mlp
"In Duplicate
"cc: Mr. R. S. Mortenson
 "Frederick Raff Company
 "271 Sheldon Street
 "Hartford, Connecticut"

5, 1954, supra) as it was required to do under the Miller Act.

On October 27, 1960, believing that a further hearing should be held, the Court ordered that a hearing be set for November 28, 1960, at Scranton, Pennsylvania, and directed plaintiff to furnish such additional testimony as it might have (1) as to the date of the completion of the work under the various contracts here involved and the amounts due and owing under each separate contract, and (2) as to the exact notice given the prime contractor under the provisions of the Miller Act, 40 U.S.C.A. § 270b, as to form, content and time, with particular reference to the ninety day period referred to in the Act.

At the rehearing plaintiff again failed to offer any direct testimony with respect to when the last work was performed or last material was supplied under either of said contracts. The Court, at the rehearing, again told plaintiff of the necessity for it to prove the date the last work was performed or last materials supplied. At plaintiff's request and over defendants' objection, the Court granted an adjournment until the following morning to enable plaintiff to produce a foreman or someone to testify to the essential dates.

 At the time of the adjourned hearing, plaintiff called a Mr. Scott, presently plaintiff's District Manager at Philadelphia. Scott testified that plaintiff's home office was at Youngstown, Ohio. Plaintiff then attempted to offer, through Scott, Exhibits Nos. 15 and 16. These papers were captioned: " 'Automatic' Sprinkler Corporation of America, General Offices, Youngstown 1, Ohio, Completion of Contract Report." Both exhibits identified the work as that done on United States Signal Corps Depot Contract, Tobyhanna, Pennsylvania,—Exhibit No. 15 on Contract No. 6–1616 with date work completed September 9, 1954, Exhibit No. 16 on Contract No. 6–1557 with date work completed September 9, 1954. Inasmuch as the hearing was before the Court without a jury, the exhibits were admitted conditionally over defendants' objection.

I am now convinced the exhibits were not properly authenticated, identified and proven as business records of plaintiff.

Scott testified that he had been in telephonic communication with James A. McDermott at the home office of plaintiff in Ohio; that McDermott told him, Scott, that the exhibits were being mailed to Scranton, and what they purported to be. He also testified that he, Scott, had had no personal connection with the work at Tobyhanna, and that all of the company's records in the matter were kept in the Youngstown office. The record of the first hearing in the case shows that McDermott, the Assistant Treasurer and Assistant Secretary of plaintiff, was present and testified in extenso at that hearing. The record fails to show that either Exhibit No. 15 or Exhibit No. 16 was offered at that time. Obviously, the only person other than the person who actually made the writing, who would qualify as a proper witness to prove the genuineness of the exhibits would be the custodian of the exhibits or the person in charge or in control of such records of plaintiff company.

32 C.J.S. Evidence § 700 states:

"In order to render the books and records of a corporation admissible in evidence, they must be duly authenticated and, likewise, they must be duly identified as such, and it must be made to appear that they are the books of the corporation, kept as such by the proper officer, or some other person authorized in his absence."

McDermott apparently would qualify as a proper custodian of these records. He was in court at the trial of this very case but no attempt was then made to offer the exhibits. Scott testified that Herbert L. Green who signed the proffered exhibits as foreman was still in the employ of plaintiff, located at Philadelphia, and available as a witness. He was not called. The defendants were thus deprived of their valuable prerogative of cross-examination. Clearly the exhibits were inadmissible.

Furthermore, Scott categorically testified that the date of September 9, 1954, given as the "date work completed" on the said Completion of Contract Report could have been the date the work was accepted by Raff.

It seems more than a strange coincidence that both contracts should have been completed on the same day,—the first large contract for over $300,000 starting in February 1953, and the second relatively small contract for about $13,000 starting in November 1953. Exhibit No. 9 (Contract No. 6–1557) clearly indicates that the last requisition date was August 10, 1954. Exhibit No. 10 (Contract No. 6–1616) clearly indicates that the last requisition date was July 21, 1954. Both exhibits indicate that as to both contracts the invoice date was September 27, 1954. Exhibits Nos. 9 and 10 simply cannot be reconciled with Exhibits Nos. 15 and 16, even if they were in evidence.

The seventh paragraph of the contract between the prime contractor and the Government (plaintiff's Exhibit No. 1) provides:

"7. Payments to Contractors.— (a) * * * progress payments will be made as the work progresses at the end of each calendar month, or as soon thereafter as practicable, or at more frequent intervals as determined by the contracting officer, on estimates approved by the contracting officer. In preparing estimates the material delivered on the site and preparatory work done may be taken into consideration.

"(b) In making such progress payments there shall be retained 10 percent on the estimated amount until final completion and acceptance of all work covered by the contract:
* * * "

It would seem to follow that plaintiff would be entitled to receive a progress payment for the work done and materials supplied during that month. This would be effected by means of a requisition made by plaintiff against Raff shortly after the end of each calendar month.

The requisition would therefore be for work done or materials supplied in the previous calendar month. It would naturally follow that the requisition of August 10, 1954 (Contract No. 6–1557) covered the preceding month, i. e., July 1954. As this was the last requisition made on that contract, it necessarily follows that the last work performed or materials supplied on Contract No. 6–1557 was performed or supplied prior to July 31, 1954. As the last and only requisition made on Contract No. 6–1616 was made on July 21, 1954, it would necessarily follow that the last work performed or materials supplied on that contract was performed or supplied prior to June 30, 1954. Furthermore, as to this contract, the date of the last and only requisition, to wit: July 21, 1954, was one hundred twenty days before the date of the receipt by Merritt-Chapman of "Automatic's" demand letter, to wit: November 8, 1954. Certainly the work was performed or materials were supplied prior to the time they were requisitioned for. In his testimony Scott admitted that requisitions represented requests for progress payments.

The Court went to great length to permit plaintiff to furnish further proof of its compliance with the Act. There is absolutely no credible testimony as to the exact completion date of the work contemplated by either of the two contracts in question, nor was there any testimony which would squarely place the completion date of either contract within the required ninety day period. Furthermore, at the second hearing, on being questioned with relation to Exhibits Nos. 15 and 16, plaintiff's witness, Scott, testified as follows:

"Q. Isn't it a fact that the Date Work Completed 9–9–54 on these two exhibits really represents the date that Raff accepted the work? Isn't that a fact?

"A. Yes."

The Miller Act (40 U.S.C.A. § 270b) under which this action is brought, provides, inter alia, as follows:

"(a) * * * any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed * *."

 The written notice in this case in and of itself, it seems to me, was adequate. As stated in United States of America for the Use of Old Dominion Iron & Steel Corp. v. Massachusetts Bonding and Insurance Company, 3 Cir., 1959, 272 F.2d 73, 75, "the applicable section of the Miller Act is 'remedial' and should be liberally construed, * * " Further, at page 75, "As was stated in the Bowden case, (Bowden v. United States for Use of Malloy, 9 Cir., 1956, 239 F.2d 572) the provisions of the Act require a minimum of attention and effort."

The Act provides that the written notice must be given "within ninety days from the date on which such person *did or performed the last of the labor or furnished or supplied the last of the material* for which such claim is made, * * *" (Emphasis supplied.) An absolute prerequisite of the Act, which is without ambiguity, is that the notice must be given within ninety days of the date the last work was performed or the last of the material was supplied.[3]

Once it became apparent that there was a conflict between the dates set forth in Exhibits Nos. 9 and 10 and the dates set forth in Exhibits Nos. 15 and 16, it was the clear duty of plaintiff to clear the conflict. This was not done.

Plaintiff having failed to clearly establish the date on which it performed the last labor or the date it furnished or supplied the last material, it necessarily follows that it has not met the ninety day requirement. This becomes perfectly apparent when considering the conflict of dates as they appear in the exhibits above referred to.

The requirements under the Act are few but they are clear, concise and unambiguous. As was stated in Bowden, supra, "We do not believe that Congress intended to have it held that such little expenditure of effort is too much diligence to require of a supplier in order that he may secure his right of action on the payment bond."

The use plaintiff has failed to prove its compliance with the Act.

Judgment will accordingly be entered in favor of the defendants.

---

3. Fleisher Engineering & Construction Co. et al. v. United States for Use and Benefit of Hallenbeck, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12; United States of America for Use of Soda v. Montgomery, 3 Cir., 253 F.2d 509.